J-S11024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| KEITH ANTHONY ROSARIO | : | |
| Appellant | : | No. 776 WDA 2025 |

Appeal from the Judgment of Sentence Entered February 26, 2025
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0002611-2017

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY LAZARUS, P.J.:                     **FILED: June 11, 2026**

Keith Anthony Rosario appeals from the judgment of sentence, entered in the Court of Common Pleas of Washington County, after this Court reversed his judgment of sentence and remanded the case for resentencing, for the second time, on his convictions for one count each of attempted homicide[1] and conspiracy to commit aggravated assault,[2] two counts of aggravated assault,[3] and two counts of kidnapping.[4]  On the most recent remand, the sentencing court imposed an aggregate sentence of 25 to 50 years' imprisonment, followed by 12 months of re-entry supervision.  Rosario

---

[1] 18 Pa.C.S.A. §§ 901(a), 2501(a).

[2] *Id.* at §§ 903(a)(1), 2702, and 2901.

[3] *Id.* at §§ 2702(a)(1), (a)(4).

[4] *Id.* at §§ 2901(a)(2), (a)(3).

challenges both the discretionary aspects of his sentence and its legality. After careful review, we affirm.

This Court previously summarized the underlying facts of this case as follows:

> [I]n September 2017, Rosario and two other individuals assaulted the victim, Marcus Stancik, as he was walking in an alley. They threw him into their van and drove him to a different location, where Rosario removed [Stancik] from the vehicle and shot him at the base of his skull near his neck. [Rosario] attempted to fire a second shot, but his gun jammed, preventing him from doing so. Stancik survived the gunshot wound and identified Rosario as one of his assailants to law enforcement.

*Commonwealth v. Rosario*, 931 WDA 2022, at *1 (Pa. Super. filed June 21, 2023) (unpublished memorandum decision). On February 7, 2019, after a jury trial, Rosario was convicted of the above-named offenses.

The trial court held a sentencing hearing on June 3, 2019, at which it received into evidence a pre-sentencing investigation report (PSI) and victim impact statement, and heard Rosario's allocution. *See* N.T. Sentencing Hearing, 6/3/19, at 4–10, 13–17. After the hearing, the court sentenced Rosario to an aggregate term of 35½ to 90 years' imprisonment.[5] *Id.* at 29.

---

[5] The court sentenced Rosario as follows: 120 to 240 months' imprisonment on the attempted-homicide charge, which merged with aggravated assault in the first degree for purposes of sentencing; 36 to 120 months' imprisonment on the charge of aggravated assault in the second degree; 90 to 240 months' imprisonment on the subsection (a)(2) kidnapping charge; 90 to 240 months' imprisonment on the subsection(a)(3) kidnapping charge; and 90 to 240 months' imprisonment on the conspiracy charge. The sentences were ordered to run consecutively. *See* N.T. Sentencing Hearing, 6/3/19, at 26–28.

Rosario filed a timely direct appeal, challenging, *inter alia*, the legality and discretionary aspects of his sentence. With regard to legality of sentence, Rosario argued, first, that his separate terms of sentence for convictions of attempted homicide and criminal conspiracy were illegal, because both charges were inchoate crimes "designed to commit or to culminate in the commission of the same crime;" and, second, that his sentences for two counts of kidnapping violated double jeopardy because they arose from the same criminal act. *See Commonwealth v. Rosario*, 248 A.3d 599, 615–16, 619 (Pa. Super. 2021). He also challenged the discretionary aspects of his sentence, asserting that: (1) his sentence was disproportionate and not properly individualized; (2) the sentencing court "implied" he was "without the possibility of rehabilitation;" and (3) the imposition of consecutive sentences resulted in an excessive aggregate sentence, which violated prohibitions against cruel and unusual punishment under both the federal and state constitutions. *Id.* at 613, 615. In a published opinion, this Court reversed, agreeing with Rosario that his sentences for conspiracy and two kidnappings were illegal, and remanding for resentencing. *Id.* at 617–21. However, this Court rejected Rosario's challenge to the discretionary aspects of his sentence, finding it was not excessive and did not constitute cruel and unusual punishment. *Id.* at 614–15.

On March 25, 2022, the trial court held a resentencing hearing, at which it received into evidence Rosario's 2019 PSI with an addendum addressing the revised sentencing guidelines and prior character testimony from Rosario's

family members from the 2019 hearing, and heard Rosario's new allocution. *See* N.T. Resentencing Hearing, 3/25/22, at 5–10. During his allocution, Rosario stated that he worked as a janitor at the prison, and he was waiting to begin cosmetology school to become a barber, teaching himself Italian, "becoming more informed in the art of law," and writing a book. *Id.* at 9. He had completed all prison-recommended classes and put himself on waitlists for optional classes. *Id.* at 10.

After the hearing, the sentencing court imposed an aggregate term of 25 to 50 years' imprisonment, maintaining the same sentence for the attempted homicide charge, but increasing Rosario's minimum sentence for his aggravated assault conviction from 36 to 60 months' imprisonment, the statutory maximum, and his minimum sentence on his kidnapping charge from 90 to 120 months' imprisonment, also the statutory maximum. *Id.* at 25–27. The court provided a contemporaneous statement of its reasoning for the sentence at the hearing, citing the following considerations: Rosario was on parole for a firearms violation at the time of the offense and, therefore, prior attempts to rehabilitate Rosario had failed; Rosario lacked remorse and failed to accept responsibility for his actions; the assault had a significant impact on the victim, Stancik; and Rosario involved a juvenile in the crime, with whom he shared a close relationship, almost like father and son. *Id.* at 27–29.

Rosario filed a timely direct appeal of his 2022 judgment of sentence, challenging its discretionary aspects and legality. This Court reversed and

remanded for resentencing in an unpublished memorandum decision, finding

the sentencing court did not sufficiently justify its decision to increase

Rosario's sentences on the aggravated assault and kidnapping convictions.[6]

_____

[6] This Court rejected Rosario's challenge to the legality of his 2022 sentence based on Rosario's claims of vindictiveness and merger. With regard to its remand based on the discretionary aspects of the sentence, this Court explained:

> While we do not discount the trial court's opportunity to observe Rosario at both sentencing proceedings, the reasoning it placed on the record at resentencing evidenced a singular focus on Rosario's statement of remorse and the circumstances of the offenses to the exclusion of any mitigating evidence. The trial court was entitled to consider Rosario's lack of remorse toward the victim as a factor in sentencing. Nonetheless, **it was required to consider the evidence Rosario presented regarding his attempts at rehabilitation in the time since his initial sentencing**. Here, **the trial court did not address that evidence** in imposing sentences that were substantially higher than the ones it imposed prior to Rosario undertaking those rehabilitative efforts.
>
> Next, we consider the findings upon which the sentence was based. As we have already observed, the trial court's rationale for imposing the statutory maximums following resentencing was substantially identical to the reasoning it provided in support of Rosario's 2019 sentence. However, a trial court on resentencing may not mechanically reimpose its earlier sentence without considering any change in circumstances that may have arisen in the intervening years. [] The trial court relied on the same findings to support the 2022 sentence and the 2019 sentence, **but made no effort to explain why** those findings supported a sentence substantially above the [aggravated range of the] guidelines on resentencing when it initially found an aggravated[-]range sentence to be appropriate. This was unreasonable.
>
> Finally, we consider "the guidelines promulgated by the commission" in assessing the reasonableness of a sentence. 42 Pa.C.S.[A.] § 9781(d)(4). In this respect, we reiterate that the

*(Footnote Continued Next Page)*

*See Commonwealth v. Rosario*, 931 WDA 2022 (Pa. Super. filed June 21, 2023) (unpublished memorandum decision).

On February 26, 2025, the sentencing court held a second resentencing hearing, at which it received an updated PSI. Rosario also gave a new

---

guidelines already take into account the inherent egregiousness of a particular offense. Thus, in sentencing outside of the guidelines, a trial court must demonstrate that the case under consideration is compellingly different from the "typical" case of the same offense or point to other sentencing factors that are germane to the case before the court.

Here, the minimum sentence imposed for aggravated assault with a deadly weapon was 24 months *above* the aggravated range of the guidelines. The minimum sentence for kidnapping was 48 months *above* the aggravated range of the guidelines, which the trial court calculated without the deadly weapon enhancement. **While the trial court identified several "aggravating factors" to justify its sentence, it did not acknowledge any mitigating circumstances that emerged since the prior sentencing hearing or articulate why those factors supported a departure of six years from the aggravated range of the guidelines, particularly when it had previously found based on the same information that aggravated[-] range sentences were appropriate.** Under these circumstances, where the trial court relied on [a] nearly identical rationale to impose a vastly increased sentence, we cannot conclude that it was reasonable for the trial court to exceed the guidelines.

Accordingly, we conclude that the trial court abused its discretion in resentencing Rosario to the statutory maximum sentences on the counts of aggravated assault and kidnapping. As our conclusion upsets the sentencing scheme, we vacate the sentence *in toto* and remand to the trial court to resentence Rosario and **to provide adequate reasons for the length of sentence it imposes**.

*Rosario*, 931 WDA 2022, at *7–*8 (bold emphases added) (some alterations, quotation marks, and citations omitted).

allocution. At the conclusion of the hearing, the sentencing court reimposed a sentence identical to that issued in 2022 and again provided a contemporaneous explanation of its reasons for exceeding the guidelines in imposing its sentence.

Rosario filed a timely post-sentence motion challenging the discretionary aspects of his sentence, which the sentencing court denied. He filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following issues for our consideration:

1. Did the sentencing court abuse its discretion by imposing minimum sentences at [c]ounts [t]hree[, aggravated assault, subsection 2702(a)(4),] and [f]our[, kidnapping, subsection 2901(a)(2),] that exceeded the standard and aggravated ranges for the offenses at those counts[,] thus imposing sentences that were outside of the guidelines and unreasonable, including[,] but not limited to[,] the following respects: failing to consider mitigating circumstances and Rosario as an individual, finding that Rosario remains a danger to the public and [] Stancik, focusing on the seriousness of the offenses that are already considered in the sentencing guidelines, and finding that the circumstances present an atypical case warranting minimum sentences at [c]ounts [t]hree and [f]our above the aggravated range of the sentencing guidelines?

2. Did the sentencing court abuse its discretion by imposing excessive sentences at [c]ounts [t]hree and [f]our under the circumstances of this case without new information to justify the reimposition of the same sentence that the sentencing court imposed on Rosario on March 25, 2022, when the new information since the prior sentencing only supported imposition of the lower minimum sentences at [c]ounts [t]hree and [f]our that would be within the sentencing guidelines?

3. Did the sentencing court impose an illegal sentence at [c]ount [t]hree by failing to merge for sentencing the punishments at [c]ounts [o]ne[, attempted homicide], [t]wo[, aggravated assault, subsection 2702(a)(1),] and [t]hree[, aggravated assault, subsection 2702(a)(4),] but instead adhering to 42 Pa.C.S.[A.] § 9765, which is an unconstitutional statute[,] as it was enacted in violation of the separation of powers clause of the Pennsylvania Constitution?

4. If [section] 9765 is unconstitutional as violative of the separation of powers clause of the Pennsylvania Constitution, did the sentencing court impose an illegal sentence at Count Three in violation of the double jeopardy clauses of the U.S. Constitution and Pennsylvania Constitution when it failed to merge the sentence at [c]ount [t]hree with the sentences at [c]ounts [o]ne and [t]wo?

Appellant's Brief, at 9–11.

Rosario's first two issues challenge the discretionary aspects of his sentence, a claim that does not entitle an appellant to review as of right. *See* *Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, we consider such a claim a petition for permission to appeal. *See* *Commonwealth v. Williams*, 562 A.2d 1385, 1386–87 (Pa. Super. 1989) (en banc). To invoke this Court's jurisdiction to review such a claim, an appellant must satisfy a four-part test:

(1) whether the appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether the appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Bradley*, 237 A.3d 1131, 1138 (Pa. Super. 2020) (alterations omitted).

We evaluate whether a particular issue constitutes a substantial question on a case-by-case basis. *Swope*, 123 A.3d at 338. "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268–69 (Pa. Super. 2013) (internal quotation marks omitted), quoting *Commonwealth v. Naranjo*, 53 A.3d 66, 72 (Pa. Super. 2012).

Instantly, Rosario satisfied the first three conditions: he filed a timely notice of appeal; preserved his challenge to the discretionary aspects of his sentence by filing a timely post-sentence motion; and included in his brief the requisite Pa.R.A.P. 2119(f) statement. Thus, we consider whether he raises a substantial question.

Rosario challenges the sentencing court's outside-the-guidelines sentences on two of his charges, arguing that the court focused solely on the gravity of the offenses and failed to consider mitigating circumstances. We conclude that Rosario raises a substantial question and, thus, his claims merit our review. *See, e.g.*, *Commonwealth v. Lekka*, 210 A.3d 343, 351–52 (Pa. Super. 2019) (substantial question raised where defendant argued sentencing court failed to recognize extensive evidence regarding his rehabilitation while in prison); *Commonwealth v. Johnson*, 666 A.2d 690, 692–93 (Pa. Super. 1995) (substantial question raised where sentencing judge sentenced outside guidelines and defendant asserted judge failed to

state adequate reasons on record to support sentence). Thus, we proceed to address his challenge on the merits.

Our standard of review of the discretionary aspects of a sentence is well-established:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill[-]will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Shugars**, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted). When reviewing the discretionary aspects of a sentence on appeal, we consider: "(1) [t]he nature and circumstances of the offense and the history and characteristics of the defendant; (2) [t]he opportunity of the sentencing court to observe the defendant, including any [PSI]; (3) [t]he findings upon which the sentence was based; and (4) [t]he guidelines promulgated by the commission." **See** 42 Pa.C.S.A. § 9781(d).

Rosario argues his sentence is unreasonable and insufficiently individualized, as "is evident through the reimposition of the same sentence as previously imposed after a prior appeal and the court's focus on the same factors to arrive at the same sentence." Appellant's Brief, at 27–28. He notes, citing this Court's 2023 decision, that the sentencing court's findings in 2025, while "not restated verbatim," do not differ substantively from its findings in 2019 and 2022. **Id.** at 30, citing **Rosario**, 931 WDA 2022, at *8. Therefore,

- 10 -

he asserts, the sentencing court did not follow this Court's directive in its 2023 memorandum decision, wherein we directed the sentencing court to provide an explanation for its imposition of an above-guidelines sentence on two charges for which Rosario received within-the-guidelines, aggravated-range sentences in 2019. *Id.* at 30–31.

Rosario further observes that, at the 2025 sentencing hearing, though the court acknowledged Rosario's significant efforts toward rehabilitation and his statement of remorse, it nonetheless focused on the same aggravating factors identified at his first two sentencing hearings, to the exclusion of updated mitigating evidence. *Id.* at 31. Rosario argues that the court essentially paid lip service to this Court's directive to consider mitigating circumstances but assigned them no weight. *Id.* at 34–35. Rosario posits that the sentencing court failed to acknowledge Stancik's latest victim impact statement, in which he "struck a much more forgiving tone," contrary to the earlier, angrier statements in his original victim impact statement. *Id.* at 35–36. Finally, Rosario argues the aggravating circumstances of the crime on which the sentencing court predominantly relied remained static across the three hearings, whereas Rosario's rehabilitative efforts and remorse, as well as the most recent victim impact statement, changed substantially. *Id.* at 37. Thus, he asserts, this new information supported a reduction, rather than an increase, on these two counts. *Id.* at 37–42.

The Commonwealth responds that Rosario's arguments go to the weight the sentencing court assigned to each of the sentencing factors, and is,

- 11 -

therefore, within the sentencing court's discretion and should not be overturned on appeal. *See* Appellee's Brief, at 23. It further notes that, at the 2025 resentencing hearing and in its Rule 1925(a) opinion in the instant appeal, the sentencing court explained it was "preserving the integrity of its prior sentence, in a manner permissible under the law," as changes in the law prevented it from reimposing the same sentence as in 2019. *Id.* at 23, 25. The Commonwealth asserts that the record shows the trial court considered all relevant factors, and its judgment of sentence should be affirmed. *Id.* at 25–26.

A sentencing court may impose an outside-the-guidelines sentence, so long as it falls within the statutory limits and the court provides a contemporaneous statement, in the defendant's presence, explaining such deviation. *Commonwealth v. Jones*, 640 A.2d 914, 917 (Pa. Super. 1994). The court must nonetheless **consider** the guidelines, "and, to ensure that such consideration is more than mere fluff, the court must explain its reasons for departure from them." *Commonwealth v. Walls*, 926 A.2d 957, 969–70 (Pa. 2007), citing *Commonwealth v. Mouzon*, 812 A.2d 617, 621 (Pa. 2002) (plurality). Under the Pennsylvania Sentencing Code, an appellate court may vacate a sentence only if the sentencing court erroneously applied the sentencing guidelines, or, if the sentence is outside the guidelines, it was

imposed in an unreasonable manner.[7]  42 Pa.C.S.A. §§ 9781(c)(1), (3); *see Walls*, 926 A.2d at 963.

When a sentence is vacated and remanded for resentencing, the original sentence "is rendered a legal nullity," and "the sentencing judge should start afresh" and re-evaluate the sentencing factors. *Commonwealth v. Ali*, 197 A.3d 742, 759 (Pa. Super. 2018); *Jones*, 640 A.2d at 919–20.  Resentencing should not be a mechanical exercise.  *Jones*, 640 A.2d at 920.  The defendant's conduct since the original sentencing hearing is relevant and should be considered, and the sentencing court should re-evaluate its previous sentence to determine whether it is still "a just and appropriate punishment." *Id.*

Instantly, at the February 2025 resentencing hearing, the sentencing court explained its decision to sentence Rosario outside the guidelines on two of his convictions as follows:

> The [c]ourt is mindful [] that it has sentenced [Rosario] to the statutory maximum allowed by law.  The reasons for such a decision are as follows:
>
> First, while the [c]ourt has thoroughly considered Pennsylvania['s] Sentencing Guidelines, it notes as an initial matter that said guidelines are merely advisory.
>
> As the [c]ourt has acknowledged, it is aware of and has extensively reviewed and considered the mitigating circumstances present in this case, including [Rosario]'s rehabilitative efforts that

---

[7] In contrast, if the sentencing court sentenced the defendant **within** the guidelines, an appellate court may only overturn the sentence if the sentencing court acted in a **clearly** unreasonable manner.  *See* 42 Pa.C.S.A. § 9781(c)(2).

he has embarked on between the time of his initial sentencing and today. Along with [Rosario]'s newfound remorse, [Rosario] has also engaged in and completed a substantial number of programs that have provided him with priceless life skills that he can hopefully utilize and, one day, apply upon his release back into society.

However, the [c]ourt cannot overlook the extensive aggravating circumstances present in this case. As the [c]ourt has outlined, [Rosario]'s commission of these offenses after being recently paroled for a firearms offense indicates that [Rosario] has not been amenable to prior efforts of rehabilitation.

[Rosario]'s inclusion of a juvenile in the commission of these offenses also warrants a sentence outside of the recommendations of the guidelines. Placing an impressionable juvenile that looked to him as a role model in such a scenario displayed both a disregard for the safety of [the juvenile] and also lack of concern about how it could influence [the juvenile's] future conduct in our society.

Moreover, the extremely violent nature of the offenses[,] along with the impact the offenses had on the victim, [] Stancik, cannot be minimized. After kidnapping and beating Mr. Stancik, [Rosario] sought to extinguish his life by shooting him in an execution-style manner. Miraculously, [] Stancik survived a bullet in the back of his head. When [Rosario] attempted to shoot [] Stancik a second time, his life was spared only because the gun jammed.

Although [] Stancik miraculously survived those near-fatal moments on September 5, 2017, the physical and mental pain from this incident will endure for the remainder of his life, symbolized by the bullet eternally lodged into his skull.

The [c]ourt by no means intends to minimize [Rosario]'s efforts at rehabilitation and encourages him to continue to engage in further rehabilitative programs. However, even after considering the mitigating circumstances in this case, the [c]ourt finds that, in light of the significant aggravating factors as well as the facts and circumstances of this particular case, a [] sentence [within the guidelines] would be wholly inappropriate.

Given the severity of the violent assault[,] coupled with the fact that [Rosario] was paroled from state prison for a firearms offense a mere four months prior to the commission of this offense, the [c]ourt finds that the maximum penalty permitted by law is not

only warranted, but absolutely necessary[,] as [Rosario] poses a great danger not only to the victim, but also to the community as well.

Furthermore, the [c]ourt's decision to sentence [Rosario] to the statutory maximum is based on preserving the integrity and the effect of its original sentence. During the pendency of [Rosario]'s initial appeal, due primarily to a change in the law, specifically the Pennsylvania Supreme Court's decision in **Commonwealth v. King**[, 234 A.3d 549 (Pa. 2020)], this [c]ourt's initial sentence was disturbed. As a result, it was no longer able to legally impose a sentence at Counts 5 and 6[, kidnapping under subsection and conspiracy].

In order to effectuate to the best of its ability the same aggregate sentence initially imposed and to preserve its sentencing scheme, the [c]ourt, in resentencing [Rosario], is imposing the statutory maximum at Counts 1, 3, and 4. While the [c]ourt is aware that it originally imposed an aggravating guideline sentence at Counts 3 and 4, the departure from the guidelines and the imposition of a statutory maximum at Counts 3 and 4 is both appropriate and necessary as a means of achieving as closely as possible the purpose, effect, and intent of its original sentencing scheme.

The [c]ourt would note as a final matter that[,] while it is now imposing the statutory maximum sentence, [Rosario]'s aggregate sentence, nevertheless, is significantly reduced, having been decreased from 35½ to 90 years to 25 to 50 years.

N.T. Resentencing Hearing, 2/26/25, at 61–64.

The mere fact that the sentencing court reimposes an identical sentence after remand for further clarification of its rationale does not necessarily imply an abuse of discretion, even if the sentence falls outside the guidelines. *See id.* at 919–21 (affirming sentence after appellate court remanded, for further explanation, outside-the-guidelines sentence for further explanation, where judge reconsidered all factors and nonetheless re-imposed same sentence). Rather, we must consider whether the sentencing court adequately explained

- 15 -

its decision to impose this outside-the-guidelines sentence. *See id.* Instantly, we are constrained to find the sentencing court did.

At the February 2025 resentencing hearing, the sentencing court indicated it recognized "the plethora of mitigating circumstances" that arose between Rosario's 2019 sentencing and the 2025 re-sentencing hearing, including recounting, in detail, the various rehabilitative efforts Rosario undertook. *See* N.T. Resentencing Hearing, 2/26/25, at 53–56. It further acknowledged Rosario's "newfound remorse," which Rosario did not articulate at either of the previous hearings, though it expressed some skepticism as to its genuineness. *Id.* at 53–54. Finally, the court stated it considered the character references Rosario submitted. *Id.* at 56.

However, the sentencing court also described the aggravating factors involved in Rosario's crimes, including its belief that previous attempts at rehabilitation were unsuccessful, as he committed this crime while on parole for a firearms violation. *Id.* at 56–58. The court noted in its Rule 1925(a) opinion that the "substantial aggravating circumstances that were present in the instant matter rendered [Rosario]'s case compellingly different than a typical case involving the same offenses." Trial Court Opinion, 8/18/25, at 11, 17. Thus, the court concluded, its 2025 sentence, identical to the sentence it imposed in 2022, was appropriate, even though it fell outside the guidelines. *See* N.T. Resentencing Hearing, 2/26/25, at 63; Trial Court Opinion, 8/18/25, at 17. We find this explanation addresses the factors outlined in 42 Pa.C.S.A. § 9721(b), as required under the law, and by this Court in its 2023

memorandum decision. *See also Jones*, 640 A.2d at 917 ("The general principle underlying the imposition of a sentence calls for the balancing of public protection, the gravity of the offense and, particularly, the rehabilitative needs of the defendant," as well as the sentencing guidelines; thus, an outside-the-guidelines sentence may be appropriate in some cases). This Court has repeatedly reaffirmed that appellate courts may not reweigh the factors considered by the trial court when imposing a sentence. *See, e.g.*, *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009), citing *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

Finally, unlike at the 2022 resentencing hearing, the sentencing court in 2025 explained that it modified the sentences on these two charges to preserve its original sentencing scheme, to the extent possible. *See* N.T. Resentencing Hearing, 2/26/25, at 63–64; *see also* Trial Court Opinion, 8/18/25, at 17; N.T. Argument on Post-Sentence Motion, 5/6/25, at 8 (identifying maintaining original sentencing scheme as "major factor" in sentencing court's decision to impose same sentence). While it could not impose the full 35½ to 90 years of its original sentence where the statutory maximums on the non-merging charges did not allow for that length of sentence, the sentencing court's modifications on these charges brought the sentence as close as possible to its original length. *See* N.T. Resentencing Hearing, 2/26/25, at 64. The courts of this Commonwealth have long held that a court may resentence a defendant to effectuate its original sentencing scheme, even if that necessitates increasing sentences on some charges.

- 17 -

*See, e.g.*, *Commonwealth v. Goldhammer*, 517 A.2d 1280, 1283–84 (Pa. 1986); *Commonwealth v. Bartrug*, 732 A.2d 1287, 1289–90 (Pa. Super. 1999); *Commonwealth v. Vanderlin*, 580 A.2d 820, 830–32 (Pa. Super. 1990). Accordingly, Rosario is entitled to no relief on his discretionary-aspects-of-sentencing claim.[8]

_____

[8] Due to our deferential standard of review, we are left with no choice but to affirm in the instant matter, as the sentencing court's statements at the hearing and reaffirmed in its Rule 1925(a) opinion indicated it considered mitigating factors, while justifying its sentence based on its perception that the circumstances of this case went beyond a "typical" case involving the same charges. In its statements on the record at the 2025 resentencing hearing, it also expressed that its decision to sentence outside the guidelines reflected its desire to maintain its original sentencing scheme to the best of its ability, which it did not mention at Rosario's 2022 sentencing, and it reiterated this rationale in its opinion in the instant matter. We observe, however, that despite this Court's clear directive in its 2023 memorandum that reversed and remanded the matter to consider mitigating factors on remand, and the substantial strides Rosario undisputedly made in both rehabilitative efforts and remorse, as well as the change in the victim's statement, the sentencing court's decision to reimpose the same sentence is troubling. While it is certainly within a sentencing court's discretion to assign greater weight to the factual circumstances of the crime than to a defendant's rehabilitative efforts and statements of remorse, we note that sentencing courts rarely have the opportunity to reconsider a sentence based on a defendant's years-long track record in prison, instead needing to rely on supposition and predictions of future behaviors. In Rosario's case, the sentencing court's misgivings about imposing a lesser sentence based on the severity and circumstances of the crime are understandable, but its decision to reimpose the same above-guidelines sentence despite Rosario's substantial improvement over approximately five years gives us pause. Nonetheless, because the trial court states it considered all factors in making its decision, we cannot say the sentence is so unreasonable as to constitute an abuse of discretion.

Rosario's next issues challenge the legality of his sentence.[9]  While acknowledging that section 9765 governs his sentencing, which prevented his second count of aggravated assault from merging with his already-merged counts of attempted homicide and first count of aggravated assault, he maintains this statute is unconstitutional, as it violates the separation of powers clause of the Pennsylvania Constitution.  We cannot agree.

Under section 9765,

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.  Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

Rosario argues section 9765 is facially unconstitutional under the separation of powers doctrine, because it constitutes a legislative mandate upon the judiciary, removing discretion from the judicial branch and directing a specific conclusion to a sentencing court in individual cases.  **See** Appellant's Brief, at 42–44.  In support of his position, he cites former Chief Justice Castille's concurrence in **Commonwealth v. Baldwin**, 985 A.2d 830, 837–39 (Pa. 2009).  **See** Appellant's Brief, at 45–47.  Before the passage of section 9765, Rosario notes, determination of whether crimes merged for purposes of sentencing was an exclusively judicial function.  **Id.** at 45.  Thus, he claims, the legislature's determination of whether crimes merge into one another for

_____

[9] We note that a challenge to the legality of sentence is non-waivable.  **See, e.g.**, **Commonwealth v. Edwards**, 256 A.3d 1130, 1136 (Pa. 2021).

sentencing purposes "is a blanket command to a co-equal sister branch of government." *Id.* at 45–46.

Moreover, Rosario argues that section 9765 is unconstitutional as applied in Rosario's case, because a single act was responsible for three charges—attempted homicide, aggravated assault by serious bodily injury, and aggravated assault by bodily injury with a deadly weapon. *Id.* at 51. When the sentencing court applied section 9765 to these facts, he asserts, it was improperly prevented from merging these counts, as they have distinct requirements for *mens rea*, and the use of a deadly weapon is not an element of attempted homicide. *Id.* at 52. Finally, he notes that **if** the statute is unconstitutional, Rosario's sentence is illegal, because the double jeopardy clause prevents these charges from merging.

The Commonwealth disagrees, noting Rosario has a high burden to overcome the presumption that a statute is constitutional, and argues Rosario has not met it. *See* Appellee's Brief, at 31–32. Even if Rosario were correct that the passage of the statute modified Pennsylvania's previous judicially developed merger doctrine, the statute is not necessarily unconstitutional, because the legislature has the power to make, alter, and repeal laws, and the contents of this statute fall within its purview. *Id.* at 33. Finally, the Commonwealth notes, Rosario's second legality claim relies upon this Court finding the statute is unconstitutional under the separation of powers doctrine, a burden he did not meet. *Id.* at 34.

Because issues relating to the legality of sentencing are questions of law, our standard of review is *de novo* and our scope of review is plenary. *Baldwin*, 985 A.2d at 833:

> The constitutional validity of duly enacted legislation is presumed. The party seeking to overcome the presumption of validity must meet a formidable burden. A statute will only be declared unconstitutional if it clearly, palpably, and plainly violates the [C]onstitution.

*Commonwealth v. Means*, 773 A.2d 143, 147 (Pa. 2001) (citations omitted); *see also League of Women Voters v. Commonwealth*, 178 A.3d 737, 802 (Pa. 2018) (challenge to constitutionality of statute begins "with the presumption that the General Assembly did not intend to violate the Pennsylvania Constitution, in part because there exists a judicial presumption that our sister branches take seriously their constitutional oaths") (internal quotation marks and citation omitted). "Any doubt regarding constitutional validity is to be resolved in favor of sustaining the statute." *Commonwealth v. Irving*, 500 A.2d 868, 871 (Pa. Super. 1985).

Instantly, the concurrence in *Baldwin*, *supra*, upon which Rosario relies, is dicta and, therefore, not controlling in this case. In *Baldwin*, a Pennsylvania Supreme Court decision from 2009, the issue the parties presented to the Court was whether section 9765 violated double jeopardy protections under the Fifth Amendment to the United States Constitution, not whether the statute violated the separation-of-powers doctrine of the Pennsylvania Constitution. *Baldwin*, 985 A.2d at 832, 835–36. In his

concurrence, Justice Castille agrees with the majority's conclusions, but only because the constitutional challenge was brought exclusively under federal double-jeopardy claims, and federal constitutional principles on that issue clearly controlled on this issue. *Id.* at 837. He expressed, however, that the fact that section 9765 governed this case did not mean the statute is "determinative generally in this area," because, in pertinent part, the statute may violate the separation-of-powers doctrine under the Pennsylvania Constitution. While the defendant did not challenge its constitutionality on these grounds, Justice Castille wrote in his concurrence,

> Section 9765 is a general statute that borrows a test devised by **this Court**, takes a part of that test, and then purports to instruct us to apply it categorically, no matter what the particular factual scenario or which substantive statutes may be involved in particular cases. As a matter of separation of powers, I question whether the General Assembly may instruct this Court as to how to analyze statutes to determine whether the offenses they define should merge. But, because appellant has not challenged the constitutionality of [s]ection 9765 on these grounds, any question pertaining to this issue must await a future case.

*Id.* at 837-38 (emphasis in original).

However, this Court, applying *Baldwin*, rejected Rosario's exact argument in *Commonwealth v. Edwards*, 229 A.3d 298, 315–16 (Pa. Super. 2020) ("Section 97[65] does not violate the separation of powers doctrine, as our Supreme Court has discerned that its 'pre-[s]ection 9765 jurisprudence characterized the merger doctrine as, first and foremost, a rule of statutory construction.'") (internal alteration omitted), quoting *Baldwin*, 985 A.2d at

835.[10]  Thus, we follow our own binding precedent and find this statute does not violate the separation-of-powers doctrine.

Because we find the sentencing court did not abuse its discretion in imposing Rosario's sentence, and the sentence is not illegal, we affirm the order of the sentencing court.

Judgment of sentence affirmed.

Stabile, J., Concurs in the Result.

Neuman, J., Did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/11/2026

---

[10] Notably, the Pennsylvania Supreme Court, in affirming this Court's decision in **Edwards**, acknowledged the Superior Court's holding below but said the issue was not directly before that Court.  **Commonwealth v. Edwards**, 256 A.3d 1130, 1134 n.10 (Pa. 2021).